**In Re SUN BELT ELECTRICAL CONSTRUCTORS, INC., Debtor.**

**The CITIZENS AND SOUTHERN NATIONAL BANK, Plaintiff,**

v.

**SUN BELT ELECTRICAL CONSTRUCTORS, INC., the Flagler Company, and M & M Electric Supply, Inc., Defendants.**

**Bankruptcy No. A85–04736–WHD.**
**Adv. No. 86–0004A.**

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Aug. 28, 1986.

See also, 56 B.R. 686.

Paul M. Hoffman, Lawrenceville, Ga., for defendant M & M Elec. Supply, Inc.

David R. Bundrick, Meals, Kirwan, Goger, Winter & Parks, P.C., Atlanta, Ga., for plaintiff C & S Nat. Bank.

Stephen V. Kern, McLain & Merritt, P.C., Atlanta, Ga., for defendant The Flagler Co.

Jay E. Loeb, Atlanta, Ga., for debtor/defendant Sun Belt Elec. Constructors, Inc.

## ORDER

W. HOMER DRAKE, Bankruptcy Judge.

This adversary proceeding is before the Court on a motion by defendant M & M

Electric Supply, Inc. ("M&M") to reconsider this Court's Order filed July 3, 1986. Said Order denied cross-motions for summary judgment filed by M&M and the plaintiff, The Citizens and Southern National Bank ("C&S"), because of a finding that a genuine issue of material fact remained to be resolved.

The relevant facts are as follows: M&M supplied electrical materials to the debtor, which was a subcontractor on a project for which The Flagler Company ("Flagler") was general contractor. The debtor, M&M, and Flagler entered into a joint check agreement under which Flagler would write checks jointly to M&M and the debtor to insure that M&M would be paid for the materials it supplied.

On August 8, 1985, Flagler issued a check in the amount of $21,043.92 payable to the debtor and M&M jointly. Flagler owed debtor at least $21,043.92 for work performed, and the debtor owed M&M exactly that amount.

On August 23, 1985, the debtor deposited the check in its account with C&S. The instrument was endorsed by the debtor but not by M&M. C&S credited the debtor's account in the full amount of the check and presented the item to the drawee, the National Bank of Georgia ("NBG"), for payment. On September 10, 1985, the debtor filed its Chapter 11 petition. On September 28, 1985, NBG returned the check to C&S unpaid.

C&S initiated this adversary proceeding by filing a complaint for a declaratory judgment as to the parties' rights to the funds in the amount of $21,043.02. After Flagler paid this amount into the Registry of the Court, Flagler was dismissed as a party on May 14, 1986.

In the Order involved in this motion, the Court denied cross-motions for summary judgment by C&S and M&M because of a factual conflict on the question of whether the debtor had been allowed to withdraw against the credit given for the check. This dispute was raised by the debtor's reply to M&M's statement of undisputed facts filed with M&M's summary judgment motion. In fact, M&M itself does not dispute that the debtor was allowed to draw against the credit given for the check. Instead, M&M asserts that this issue is immaterial to the resolution of this case.

The Order of July 3, 1986 relied upon the argument by C&S that it may be entitled to a secured claim to the check proceeds by virtue of O.C.G.A. § 11–4–208. This section provides in part: "(1) A bank has a security interest in an item and any accompanying documents or the proceeds of either: (a) In case of an item deposited in an account to the extent to which credit for the item has been withdrawn or applied...." O.C.G.A. § 11–4–208(1)(a).

The Court agrees with M&M that this U.C.C. provision must be read in conjunction with O.C.G.A. § 11–4–209, which provides that a bank gives value to the extent that it has a security interest in the item and that it can therefore acquire holder in due course status if it complies with the other requirements of O.C.G.A. § 11–3–302, defining holder in due course.

■■■ Thus, the main function of a collecting bank's security interest in the check is determining that it gave value for the purposes of deciding whether it is a holder in due course. Here, if the bank allowed debtor to withdraw the credit given for the check, then the bank gave value for the item and has a security interest in the item. However, the bank is not a holder in due course under O.C.G.A. § 11–3–302 because it is not a holder as defined by the Commercial Code: "Holder means a person who is in possession of ... an instrument ... drawn, issued, or indorsed to him or to his order or to bearer or in blank." O.C.G.A. § 11–1–201(20). Here, the endorsement by debtor does not constitute an endorsement sufficient to make C&S a holder. O.C.G.A. § 11–3–116(b) requires an instrument payable to joint payees to be endorsed by all of them. *See Insurance Co. of North America v. Atlas Supply Co.*, 121 Ga.App. 1, 172 S.E.2d 632 (1970). Because of the lack of a necessary endorsement, the instrument was never negotiated to C&S, so C&S nev-

er became a holder. *See* O.C.G.A. § 11–3–202(1) (defining negotiation). Although O.C.G.A. § 11–4–205 allows the bank to supply the missing endorsement of its own depositor under certain circumstances, the bank cannot ignore a defective endorsement and supply the missing endorsement of a third party to that party's detriment. *See Perini Corp. v. First National Bank,* 553 F.2d 398, 411 (5th Cir.1977).

■ Since C&S is not a holder in due course, the transfer of the item vested C&S with only such rights as its transferee, the debtor, had in the instrument. *See* O.C.G.A. § 11–3–201(1). Here, the debtor had no rights to enforce the instrument since, pursuant to the joint check agreement, it was liable to endorse the item and deliver it to M&M for payment of its debt to M&M.

On similar facts, the Georgia Supreme Court has held a depository bank in the position of C&S liable for conversion to a damaged co-payee. In *Trust Co. of Columbus v. Refrigeration Supplies, Inc.,* 241 Ga. 406, 246 S.E.2d 282 (1978), a general contractor issued a check payable jointly to a subcontractor and a materialman. The depository bank credited the subcontractor's account when the check was deposited with only the subcontractor's endorsement. Even though the general contractor had issued the check jointly without a prior agreement to do so, the Court held the depository bank liable: "Payment of the check without the endorsement of a joint payee is an exercise of dominion and control over the check inconsistent with the nonsigning payee's rights amounting to a conversion." *Trust Co. of Columbus v. Refrigeration Supplies, Inc.,* 241 Ga. at 408, 246 S.E.2d at 284.

Thus, it is clear that the loss in this case must fall on C&S either as a converter of M&M's check or as a non-holder in due course which has only the rights of its transferee in the check. C&S may have a right of charge-back against its customer, the debtor. *See* O.C.G.A. § 11–4–212. If so, C&S will be a creditor of the debtor, and the argument that it is a secured credi-

tor will then be relevant, but it is immaterial to this case.

The Georgia cases have held the depository bank liable to a nonendorsing co-payee in situations where the drawee bank actually paid the instrument. *See Trust Co. of Columbus v. Refrigeration Supplies, Inc.,* 241 Ga. 406, 246 S.E.2d 282 (1978); *Insurance Co. of North America v. Atlas Supply Co.,* 121 Ga.App. 1, 172 S.E.2d 632 (1970). This result should not change just because the drawer notified the drawee bank not to pay the improperly endorsed instrument. If the drawee bank had paid the item, C&S would clearly have no security interest since receipt of final settlement for an item is a realization of the security interest in the item and its proceeds. *See* O.C.G.A. § 11–4208(3). Therefore, if NBG had paid the check, this case would be the same as *Trust Co. of Columbus* and C&S would be liable. Other than the existence of a specific joint check agreement, the only difference between *Trust Co.* and this case is that the payor bank never paid the instrument. This one fact should not alter the liability of C&S, since its conduct was the same as the depository bank in *Trust Co.* Clearly then, the status of C&S as secured goes only to its relationship with the debtor. That is, even if the funds paid into Court can be considered "proceeds" and even if C&S has a security interest in the money, it is still liable to M&M for conversion.

Accordingly, it is ORDERED that this Court's Order of July 3, 1986 be VACATED and that summary judgment for defendant M&M be GRANTED on its counterclaim and against plaintiff on plaintiff's complaint.

It is FURTHER ORDERED that summary judgment for plaintiff C&S be DENIED and that its complaint be DISMISSED.