72950. VOYAGER LIFE & HEALTH INSURANCE COMPANY
v. PULASKI BANKING COMPANY.
(351 SE2d 725)

BENHAM, Judge.

Appellant Voyager Life & Health Insurance Company ("Voyager") was sued by the executors of the Estate of Laura Mays for nonpayment of a credit life insurance policy issued on the life of Mrs. Mays. Appellant brought a third-party complaint against appellee Pulaski Banking Company ("Pulaski") for indemnification, contending that it was an act or omission by an employee of Pulaski that caused an unauthorized policy to be issued insuring Mrs. Mays' life. Appellee brought a motion to dismiss the third-party complaint, which the trial court granted by awarding summary judgment to Pulaski. Appellant brings this appeal from the grant of summary judgment to appellee.

OCGA § 9-11-14 provides that at any time after commencement

of the action, a defendant, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him. The impleader provisions of this section are to be liberally construed so as to avoid multiplicity of actions, save time and cost of reduplication of evidence, and to assure consistent results from similar evidence and common issues. *Ins. Co. of North America v. Atlas &c. Co.*, 121 Ga. App. 1 (172 SE2d 632) (1970). The linchpin issue in this case, as we view it, is whether under the factual background presented, the third-party defendant bank is secondarily liable in whole or in part for plaintiff's claim, so as to establish a third-party complaint in favor of appellant. Id. at 4. With that in mind, we turn to the facts of this case.

Laura Mays, the decedent insured, obtained a Voyager credit life insurance policy to secure payment of a loan obtained from appellee. In the presence of appellee's loan officer, Mrs. Mays signed a statement acknowledging she was in good health and did not have cancer. On deposition, the loan officer who approved Mrs. Mays' credit life insurance application testified that it was common knowledge that Mrs. Mays had cancer. Mrs. Mays subsequently died from cancer.

The gravamen of appellant's argument that it is entitled to indemnification from appellee lies in the agreement between appellant and Pulaski, which agreement stated in pertinent part: "Any action or omission by the creditor not expressly authorized by this agreement or which is not essential to the conduct of the insurance functions authorized by this agreement and which is intended to or actually results in a benefit to the creditor and which is detrimental to the conduct of Voyager's business and which is contrary to Voyager's established mode of operation shall be deemed an act or omission of and by the creditor. Voyager shall not be made liable for such unauthorized acts or omissions and the creditor hereby agrees to indemnify Voyager for any loss sustained by reason of such acts or omissions of the creditor." Appellant contends and we agree that the acts of Pulaski's loan officer caused an unauthorized credit life insurance policy to be issued. The loan officer knew before issuing the insurance certificate that Mrs. Mays had been treated for cancer, and she testified that she could have telephoned appellant and informed them of Mrs. May's condition, thereby giving appellant an opportunity to determine whether it desired to risk insurance coverage on a cancer patient. The loan officer's acts caused an unauthorized certificate of insurance to be issued.

While agreeing that its employee caused the insurance policy to be issued, Pulaski argues that indemnification is not justified under its agreement with Voyager, since no benefit inured to the bank. The trial court agreed and granted summary judgment to Pulaski. We dis-

agree.

Pulaski bases its argument on the fact that the proceeds of the credit life insurance policy were not used to pay the balance of the loan outstanding at the time of Mrs. Mays' death. Instead, certificates of deposit owned by Mrs. Mays and pledged as security for the loan were used to pay off the outstanding balance of the loan. Appellee argues that since the credit life insurance was not used to pay off any of the balance, it received no benefit and that, therefore, indemnification is not justified. Although the loan was secured and ultimately paid by the certificates of deposit, the bank's argument that it received no benefit from the credit life insurance is without merit. The purpose of the credit life insurance, which was listed as collateral for the loan, was to provide the creditor with security for the outstanding loan by paying to it the balance of indebtedness owed thereon in the event of the death of the insured. Since the bank was the primary beneficiary of the insurance benefits, it had a beneficial interest. *Murray v. Life Ins. Co. of Ga.*, 107 Ga. App. 545 (130 SE2d 767) (1963). Furthermore, appellee's loan officer who prepared the loan documents and credit life insurance application involved in this case testified on deposition to even more tangible benefits received by appellee: it financed, i.e., charged interest on, the $1,534.68 premium; and the bank retained 40% of the premium as an agent's commission. Since Pulaski received a benefit from the issuance of credit life insurance, indemnification was justified under the terms of the agreement between appellant and appellee.

Accordingly, appellant's third-party complaint established and set forth a claim against Pulaski upon which relief can be granted. *Central of Ga. R. Co. v. Lester*, 118 Ga. App. 794 (165 SE2d 587) (1968). Therefore, it was error to grant third-party defendant Pulaski's motion to dismiss.

*Judgment reversed. Deen, P. J., and Beasley, J., concur specially.*

BEASLEY, Judge, concurring specially.

I cannot concur fully in the majority opinion because it is couched to some degree in terms which find facts, a posture which this case has not yet achieved. The question before us is not "whether . . . the . . . bank *is* secondarily liable in whole or in part for plaintiff's claim," but rather whether the evidence thus far adduced shows that the bank is entitled to judgment as a matter of law. OCGA § 9-11-56 (c).

Secondly, I agree that part of the insurance company's third-party complaint alleges a breach of the Creditor Agency Agreement by which the bank agreed to act on behalf of the insurance company in soliciting insurance contracts. In compensation for its services as

agent, the bank receives commissions, as in the case of the issuance of Mrs. Mays' policy. This is the benefit, plain and simple, which renders it liable to indemnify the insurance company, its principal, for the acts or omissions described in the paragraph from the contract quoted in the majority opinion.

I do not see that the collateral benefit of the interest earned on the debtor's loan has anything to do with it. It is not even mentioned in the agreement between the insurance company and the bank which the former seeks to enforce.

I am authorized to state that Presiding Judge Deen joins in this special concurrence.

DECIDED DECEMBER 5, 1986.

*Edward B. Benton*, for appellant.
*Denmark Groover, Jr., Wallace Miller III*, for appellee.